## SUPREME COURT.

ERASTUS CORNING and CORNELIUS M. HORTON agt. JOHN
LEWIS and MARY J. LEWIS, his wife.

The wife's *separate estate* cannot be charged with a debt fraudulently contracted,
without her privity, sanction, or adoption, whether such fraud be committed
by her husband or any of her relatives; although the materials for which the
debt was created went directly for the benefit of her separate estate with her full
knowledge.

*Erie General Term, January,* 1869.
*Before* DANIELS, P. J., MARVIN and LAMONT, *Justices.*

THIS was an appeal from a judgment on report of a referee,
in action to charge the wife's separate estate with a debt
fraudulently contracted by her husband. The referee's
opinion gives the facts and circumstances in the case, and is
as follows :

This is an equity action, in which the plaintiffs seek to
charge the real estate of the defendant, Mary J. Lewis,
with the purchase price of certain articles which were used
in ·making repairs upon a dwelling-house upon her real
property—on the ground that as Mrs. Lewis' estate has
reaped the benefit of these articles, and its value been en-
hanced by their cost, she should respond in her estate for
their price, although she did not, in person, contract for
them—and also upon the ground that the articles were fur-
nished upon the credit of the estate, having been sold to the
defendant, John Lewis upon his representation that he was
the owner of the real estate, and having been thus fraudlent-
ly procured from the plaintiffs, were applied in the repair of
the house of the female defendant, with her knowledge and
consent, as well as that of her husband, the defendant, John.

The equities are certainly all in favor of the plaintiffs, as
a brief review of the facts will show.

In the latter part of May, 1866, the defendant, John Lewis, being engaged in repairing the house in which he and his wife, Mary, J., resided upon the real estate of Mary J., called upon the plaintiffs, and desired credit for certain articles of hardware, which he would require in doing the work which he had undertaken. The plaintiffs' clerk told him they were willing to give credit to a party whom they knew to be all right. John then said he owned a house in Bowmansville, and wanted the materials for repairing his roof, and the plaintiffs relying upon the truth of these assertions, allowed him to take the goods without payment. These statements of the defendant John, were untrue, as the defendant Mary J., was the owner of the premises to which he referred. There is a conflict between the plaintiffs and John Lewis, in reference to the false representations which are [wholly denied by John in his testimony— but as one of the plaintiffs, and the head clerk, swear to the statements, and as the defendant John was a total stranger to the firm till that time, and as it is hardly probable that they would as business men have trusted a stranger without some statement from him of his responsibility, I am induced to believe that the defendant, John, made the false representations charged, and that he did so with the fraudulent purpose of obtaining the articles desired, without payment.

The defendant, Mary J., was not present at the interview when the purchase was made, and there is no evidence connecting her with the transaction, further than her knowledge that the materials purchased were being used in erpairing the house.

The materials purchased of the plaintiffs have not been paid for and they have all gone towards enhancing the value of the estate of the female defendant.

The defendant John being entirely insolvent, the plaintiffs are left without remedy, unless this court shall, through its equity powers, declare that the debt shall be made a charge

Corning agt. Lewis.

upon the property of the wife which has been . benefited and increased by the plaintiffs means.

I should have no doubt in regard to the proper disposition to be made of the case, if there were direct proofs of the wife's complicity in obtaining the goods, or of her knowledge before or while the materials were being used, that her husband had obtained them through false representations as to the ownership of the estate.

The case relied upon by the plaintiffs' counsel is *Mattice* agt. *Lillie*, 24 *How.*, 264.

In that case the plaintiff furnished a quantity of lumber upon the faith of certain representations, made by the male defendant, that he was owner of certain premises which were owned in fact by the wife, the female defendant. The lumber went into the construction of the house belonging to the wife, and with her knowledge and consent.

The court say in deciding the case, that the complaint sets forth these facts, "and if sustained by the evidence, make a case, I think, where the plaintiff is entitled to recover;" but it seems upon a perusal of the opinion, that the court below found in addition to other facts, that the wife supposed that the plaintiff sold the lumber in the belief that the husband owned the house, and that she subsequently promised to make some provision for the plaintiff's benefit. In the case under consideration, there is no direct evidence that the wife knew of the fraud which her husband had committed—nor do I suppose that this knowledge on her part is essential to sustain this action.

Our legislature has seen fit to go very far. in severing the husband and wife as they were once supposed to be joined, but I hardly think that in equity it can be supposed that a woman is entirely ignorant of the fact that her husband is insolvent, or is only earning four or five dollars a week. It is hardly to be expected that a woman of ordinary sense would suppose that business men would trust her husband. under those circumstances, for several hundred dollars

worth of materials, except upon some statements regarding his responsibility. Husband and wife living under the same roof and in full accord, must be supposed to know of each other's circumstances and pecuniary ability, and I think that in this case it is not straining too much to suppose and infer from all the circumstances, that Mrs. Lewis knew that her husband had obtained these goods upon the credit of the real property which was hers. Assuming this fact, we then have her consenting to the materials being used upon her house and her estate increased in value by the plaintiffs' means, and that she failed to repudiate or disclose to the plaintiffs the truth of the case.

I say further, that this is not an unfair inference, for if we go so far as to sever the husband and wife entirely in this transaction, and to regard Mr. and Mrs. Lewis as two ordinary persons, bearing no other relation to each other than that of two individuals, then the male defendant must be looked upon as the agent of the female. And though the purehase was made without authority, yet the female has by her acquiescence sanctioned the transaction and adopted the act of her agent. If otherwise, it was her duty to inquire of whom and in what manner the purchase was made, and if she disapproved, to so inform the plaintiffs, and put them on their guard.

I do not consider it essential to the maintenance of this action, that the wife should have authorized the misrepresentations of the husband. The foundation of the action is its equity, and it proceeds upon the ground that the plaintiffs' materials have gone into the repair of the defendant, Mary's house, with her consent, and after the false representations of ownership made by her husband. At law, the action could not be maintained, but the court in equity seeks to redress injuries which are remediless at law, it being a part of their duty to prevent acknowledged wrongs and to protect acknowledged rights (*Colvin* agt. *Currier*, 22 *Barb.*, 371), and as the plaintiffs in this case are remediless,

except through the equity powers of the court, I think they ought to recover.

GEORGE W. COTHRAN, *for appellants, defendants.*
M. A. WHITNEY, *for respondents, plaintiffs.*

*By the court,* LAMONT, J.: The defendants are nusband and wife. The action is brought to charge upon the separate estate of the wife, the amount of a bill of goods bought by the defendant, John Lewis, of the plaintiffs.

So far as the wife, Mary J. Lewis is concerned, the facts found by the referee to whom this action was referred are as follows: She owned a house and lot at Bowmansville, Erie county, in which she and her husband resided. Her husband repaired the roof of her dwelling, situated on this lot, in 1866, and she knew he was making such repairs and using materials for the purpose.

The wife did not know the plaintiffs, and never authorized her husband to purchase the materials, nor did she know where he obtained them, nor in what manner they were obtained by him.

On these bare facts the referee decided that the wife's separate estate was chargeable with the plaintiffs' demand against the husband for the materials used.

There is no head of equitable jurisprudence which can be invoked to sustain this judgment.

The fact found by the referee that the husband had been guilty of swindling the plaintiffs in the purchase of these materials, by falsely representing that he owned the house and lot, and gave the plaintiffs his note for the bill, which they were unable by a judgment, execution, and supplementary proceedings thereon to collect of him, does not alter the position of the wife, who knew nothing of these circumstances, and never sanctioned them, nor promised to pay the debt.

Corning agt. Lewis.

The wife's separate estate cannot be charged with a debt fraudulently contracted, without her privity, sanction or adoption, whether such fraud be committed by her husband or any other of her relations.

Of her separate estate, she is the absolute owner, and has the sole disposition, exclusive of her husband: Her property is not liable for his debts, much less for his torts.

The wife was ignorant of her husband's transactions in this matter, and he was not her authorized agent. Whether he had paid for these materials or not, whether he was solvent or a bankrupt, where or how he had obtained them, she had no information, and was under no responsibility.

The case of *Mattice* agt. *Lillie* (24 *How. Pr.*, 264), upon which the referee relied in deciding this case, is not an authority for his judgment. In that case the court put their decision on the express ground that the lumber used in improving the wifes separate estate, was originally procured by the fraud of the husband, who represented himself the owner, with the intent of the wife at the time of its purchase, that it should be so used, that she was aware, that the plaintiff sold the lumber in the belief that the husband owned the house, and that she promised to pay for it.

The wife there, was held privy to the whole transaction, of the fraudulent contracting of the debt from the start, and knew and intended that the lumber should be thus obtained for the express purpose of improving her estate, and adopted the transaction in all its length and breadth, and promised to make compensation.

This case is entirely barren of these controlling circumstances, and the judgment must be reversed, and a new trial ordered, with costs to abide the event.